E-FILED
Friday, 10 April, 2026 11:46:10 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SHANCE DALTON, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-03368-MMM |
| | ) | |
| DR. THOMAS BAKER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Jacksonville Correctional Center, asserts claims for deliberate indifference to serious medical needs.

### I.    MERIT REVIEW

The case is before the Court for a merit review of Plaintiff's complaint. The Court must "screen" Plaintiff's complaint, and through such process identify and dismiss any legally insufficient claim. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff names as Defendants Dr. Thomas Baker and Wexford Health Sources, Inc.

Plaintiff complains about Dr. Baker's medical care on two occasions.

First, on May 26, 2025, Plaintiff suffered a torn bicep during a fight with another inmate. His bicep was deformed and he had hemorrhaging in his left forearm. He was in pain. Dr. Baker refused to refer Plaintiff for emergency treatment and provided inadequate pain treatment. Baker authorized emergency treatment for the other involved inmate despite that inmate having only superficial injuries. Plaintiff experienced these conditions for a week. Plaintiff later had emergency surgery to repair the torn bicep muscle.

Second, on July 1, 2025, when running, Plaintiff perceived his hamstring to "pop," and fell down hard. He was in excruciating pain. His left leg was deformed, swollen, and crooked in the knee area. He could not walk, stand, or be touched. Nurse Ore called Dr. Baker at home to get authorization to sent Plaintiff to the emergency room. Dr. Baker refused despite Nurse Ore explaining that Plaintiff was "in bad shape" and "in pain." Dr. Baker disregarded Nurse Ore's description of Plaintiff's condition and sight unseen diagnosed Plaintiff with a sprained leg. Plaintiff's left tibial plateau was fractured and required emergency surgery. The surgery did not occur until July 29, 2025, due to Dr. Baker's indifference. Plaintiff suffered unnecessary excruciating pain because of the delay.

Plaintiff states a plausible Eighth Amendment claim for deliberate indifference to a serious medical need against Dr. Baker. Plaintiff has plausibly alleged that this

Defendant knowingly delayed or denied Plaintiff's needed medical care causing significant and unnecessary pain. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc).

Plaintiff's allegations do not state a claim against medical contractor Wexford Health Sources, Inc. Plaintiff clearly alleges wrongdoing by Dr. Baker. But there is no indication that Plaintiff's alleged inadequate care was caused by the policies of Wexford.

## II.    REQUEST FOR COUNSEL

Plaintiff has asked for court assistance in finding an attorney. Doc. 5.

The Seventh Circuit has summarized the legal standard that governs Plaintiff's request for counsel as follows:

> Under 28 U.S.C. § 1915(e)(1), a federal court "may request an attorney to represent any person unable to afford counsel." The statute is "entirely permissive." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). Civil litigants have no constitutional or statutory right to court-appointed counsel, and § 1915(e)(1) "does not authorize the federal courts to make coercive appointments of counsel." *Id.* at 653 (quoting *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 310, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989)). Rather, the statute "codifies the court's discretionary authority to recruit a lawyer to represent an indigent civil litigant *pro bono publico*." *Id.*

> "Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). "District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most." *Id.*

> Accordingly, we have recently explained that "the decision whether to recruit a lawyer for a particular plaintiff is made against

the twofold backdrop of a high volume of indigent, pro se litigants (particularly incarcerated individuals) and a small pool, by comparison, of attorneys willing and able to take those cases on pro bono." *Watts v. Kidman*, 42 F.4th 755, 763 (7th Cir. 2022). Based on these and other practical considerations, we have held that district judges should engage in a two-step inquiry when faced with a request for pro bono counsel under § 1915(e)(1), asking first "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654.

The first step needs no elaboration. Step two "can be complex" and involves a pragmatic judgment about the difficulty of the case and the plaintiff's ability to present it to the court on his own. *Watts*, 42 F.4th at 760. "The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand." *Pruitt*, 503 F.3d at 655. A judge will normally consider "the plaintiff's literacy, communication skills, educational level, and litigation experience" along with any evidence in the record "bearing on the plaintiff's intellectual capacity and psychological history." *Id.* But these are merely factors that are ordinarily relevant. No one factor is "necessary or conclusive." *Id.* at 655 n.9. Indeed, "[t]here are no fixed requirements for determining a plaintiff's competence to litigate his own case." *Id.* at 655. Ultimately, the "inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*

Finally, "the decision whether to recruit pro bono counsel is left to the district court's discretion." *Id.* at 654. Our job is to ensure that this discretion is exercised in accordance with appropriate legal principles. The "question on appellate review is not whether we would have recruited a volunteer lawyer in the circumstances, but whether the district court applied the correct legal standard and reached a reasonable decision based on facts supported by the record." *Id.* at 658.

*Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024). In determining the second step,

the Court should view the case through the lens of certain specific factors that the

Seventh Circuit has enumerated:

> Though this inquiry must be case-and plaintiff-specific, we have
> identified circumstances that tend to diminish a prisoner-plaintiff's
> ability to litigate pro se, such as when: (1) the case reaches later
> stages of litigation, (2) the plaintiff is transferred to another facility
> and loses access to relevant witnesses or evidence, (3) the claim
> depends on the state of mind of the defendant, and (4) expert
> testimony is necessary to prove the claim.

*Owens v. Wexford Health Sources, et al.*, No. 22-2882, 2024 WL 5242367, at *3 (7th Cir. Dec.

30, 2024), citing *James v. Eli*, 889 F.3d 320, 327-28 (7th Cir. 2018).

First, Plaintiff has shown a reasonable attempt to obtain counsel on his own,

having written to several attorneys asking for assistance, without success.

Second, Plaintiff is able to represent himself. Plaintiff's claims are not factually

difficult; he alleges Dr. Baker refused to effectively treat two obvious and significant

medical issues resulting in suffering unnecessary pain until emergency surgery was

ultimately performed as to both injuries. Plaintiff has personal knowledge of his injuries

and treatment and can testify to what he experienced. Written discovery should

produce to Plaintiff the relevant written medical and prison records related to his

claims. Plaintiff's claims are not particularly legally difficult, though all federal

litigation is difficult to a degree. Plaintiff's pleadings are clear, legible, and coherent.

Plaintiff's education level is that of some college, and he appears well able to

communicate. There is no information before the Court that indicates Plaintiff is

mentally impaired to the extent that he cannot represent himself. Plaintiff's level of legal

experience is not before the Court. And considering the circumstances the Seventh Circuit suggested in *Owens*, none weigh heavily in favor of a search for counsel on the specific facts here. The case is near its outset. Plaintiff has not been transferred to a different prison. There is a state of mind element, which can support a search for counsel, but is not dispositive, and in this case Plaintiff appears able to litigate this case. Expert testimony may be implicated in this action, though at this time Defendants have not disclosed experts, and Plaintiff's claim as the Court understands it is a temporary denial of treatment for obvious injuries reducing the nuance of this case.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [5] is DENIED.**

2. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states a plausible Eighth Amendment claim for deliberate indifference to a serious medical need against Dr. Baker. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15. Plaintiff's claim against Wexford is dismissed, and the Clerk is to terminate this Defendant.**

3. **This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

4. **The court will attempt to serve defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

5. **With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that**

address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effecting service. Forwarding addresses will be retained only by the clerk and shall not be disclosed by the clerk.

6. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and later pleadings shall be to the issues stated in this order. Generally, an answer sets out the defendants' positions. The court does not rule on the merits of those positions unless a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.

7. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are NOT filed with the clerk. The plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.

8. Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.

9. The plaintiff shall immediately notify the court, in writing, of any change in mailing address and phone number. Plaintiff's failure to notify the court of such changes will result in dismissal of this lawsuit.

10. The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Entered this 10th day of April, 2026.

s/Michael M. Mihm

MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE